IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:09-CV-400-BO

| | | |
|---|---|---|
| IVY WESLEY COOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| GENERAL ELECTRIC COMPANY, | ) | |
| GE AVIATION, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court upon a motion filed by Defendants General Electric Company and GE Aviation requesting this Court to compel arbitration or, in the alternative, to dismiss the case for lack of subject matter jurisdiction [DE-30]. Defendants' motion has been fully briefed, the parties have argued the motion in an evidentiary hearing before the Court, and the Court is now prepared to adjudicate the motion.

PROCEDURAL HISTORY

On August 10, 2009, Plaintiff Ivy Wesley Cook ("Plaintiff") served on General Electric Company and GE Aviation ("GE") a Complaint filed in the Superior Court of Wake County, North Carolina. At the time, Cook was represented by attorney Rita Henry. The Complaint purports to bring the following claims against Defendants arising out of Plaintiff's employment with GE:

- Wrongful discharge in violation of North Carolina public policy as stated in N.C. Gen. Stat. § 143-422.2, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981 (Compl. ¶ 41);

- Violation of Plaintiff's State Constitutional Rights, specifically violation of Article 1, § 19 of the North Carolina Constitution (Compl. ¶ 55);

- Age Discrimination, although no statutory basis for this claim is provided (Compl. ¶¶ 57-59);

- Intentional Infliction of Emotional Distress (Compl. ¶¶ 60-68);

- Aggravated Breach of Contract, Promissory Estoppel and/or Fraud (Compl. ¶¶ 69-83); and

- Negligent Infliction of Emotional Distress (Compl. ¶¶ 84-90).

On September 8, 2009, GE timely removed Plaintiff's action to this Court pursuant to 28 U.S.C. § 1441 [DE-1]. GE filed and served an answer on September 14, 2009 [DE-4]. On September 15, 2009, the Court ordered the parties to conduct a Rule 26(f) meeting by October 15, 2009, and to submit a joint discovery plan within 14 days of the Rule 26(f) meeting [DE-5]. After receiving no response from Ms. Henry, GE submitted its proposed discovery plan to the Court on October 29, 2009 [DE-6]. On November 11, 2009, the Court entered an order delaying entry of the scheduling order and ordering Plaintiff or his duly admitted counsel to contact counsel for GE to participate in the Rule 26(f) conference and to submit a joint proposed discovery plan within 21 days [DE-7]. In the same order, the Court noted that because Ms. Henry was not admitted to practice in this Court, Plaintiff had been designated a *pro se* party. *Id.* After neither Plaintiff nor any attorney representing him failed to contact counsel for GE, on December 10, 2009, the Court entered a Scheduling Order based upon GE's proposed discovery plan [DE-8]. In accordance with the terms of the Scheduling Order, GE served its Rule 26(a)(1) initial disclosures on Plaintiff on January 11, 2010. On January 25, 2010, Plaintiff filed a motion to remand the case to state court and GE filed a response opposing this motion [DE-9,15]. The Court has not yet ruled on Plaintiff's motion to remand.

Despite the pending motion to remand, the parties have exchanged written discovery and

2

Plaintiff's deposition was scheduled for March 24, 2010. When Plaintiff appeared for his deposition, however, he requested that the deposition be postponed to allow him additional time to find an attorney [DE 26]. Counsel for GE agreed to this request and, the same day, the parties submitted a joint motion to extend the discovery period for sixty (60) days to allow Plaintiff additional time to find an attorney. *Id.* After allowing Plaintiff six weeks to retain an attorney, counsel for GE on April 15, 2010, noticed Plaintiff's deposition for May 4, 2010. *Id.* Plaintiff, however, objected to the Notice of Deposition and did not attend [DE 23, 24]. When Plaintiff appeared for his deposition on March 24, and on multiple occasions thereafter, counsel for GE sought to obtain Plaintiff's consent to move this matter to arbitration in accordance with the arbitration agreement Plaintiff signed upon beginning his employment with GE [DE 26-5]. Plaintiff did not respond to GE's arbitration requests until filing a letter with the Court on April 26, 2010, in which he refused to have his claims moved to arbitration [DE 24]. GE now moves this Court for an order compelling Plaintiff to submit his claims to the GE's dispute resolution procedure, including binding arbitration, or, in the alternative, dismissing the complaint for lack of subject matter jurisdiction.

## BACKGROUND

A.  <u>Overview of GE's Operational Structure</u>

GE operates facilities throughout the United States. Some of these facilities, including the Durham Jet Engine facility where Plaintiff was employed, utilize a private dispute resolution procedure designed to promote internal settlement of any employment claim or controversy. The dispute resolution procedure applicable here is entitled, "Dispute Resolution Procedure 100.90 for Aircraft Engines." (Declaration of Tomesah Harrison ("Harrison Decl.") ¶ 3, Ex. A

(hereinafter "DRP")).

B.  The Dispute Resolution Procedure Applicable to Plaintiff's Claims

The DRP covers all employees at the Durham facility who were hired on or after December 1, 2002. (Harrison Decl. ¶ 2; DRP 36.) While the DRP is intended to be flexible to allow locations such as the Durham facility that have peer review and other dispute resolution processes in place to integrate those processes with the procedures provided in DRP, ultimately, all covered employees "*are required*, as a *condition of employment*, to participate in DRP in lieu of filing covered claims in court." (Harrison Decl. ¶ 5; DRP 7-8) (emphasis added.) The final step in the DRP for all covered employees alleging covered claims is impartial and binding arbitration administered by the American Arbitration Association ("AAA"). (DRP 6, 14.)

Claims covered under the DRP, and therefore subject to arbitration, include:

• Claims relating to involuntary terminations, discharges (including constructive discharges), and notice of mass layoffs or plant closings;

• Employment discrimination and harassment claims, based on age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law;

• Claims of breach of contract or covenant (express or implied) and/or promissory estoppel;

• Tort claims (intentional torts, negligence, defamation, invasion of privacy, infliction of emotional distress, etc.); and

• Claims of violation of public policy.

(DRP 10-11.)

Under the DRP, "the arbitrator's decision shall be the final, binding, and exclusive determination of all covered claims." (DRP 8.) GE distributes the DRP among its employees. A

4

current copy of the DRP has always been available to employees electronically on-line and/or in hard copy form from the Human Resources department. (Harrison Decl. ¶ 3.)

C.   Plaintiff's Employment with GE

Plaintiff began work for GE at the Durham Jet Engine Facility on May 30, 2006. (Compl. ¶ 6.) At no time during his employment was Plaintiff subject to the terms of a collective bargaining agreement. (Harrison Decl. ¶ 6.) GE has a policy of informing applicants for employment at the Durham facility that any disputes concerning their employment or termination from employment will be governed by the DRP. At the time Plaintiff applied for employment with GE, he received notice of the DRP and agreed, in writing, to be bound by its terms. (Harrison Decl. ¶ 3-4; Ex. B.) Specifically, on May 30, 2006, Plaintiff executed an "Aircraft Engines Acknowledgment Conditions of Employment" ("Acknowledgment") document in which he agreed to "submit unresolved covered employment legal claims to a four-step resolution process, including external mediation and final and binding arbitration instead of filing such claims in court." (Harrison Decl. Ex. B.) Plaintiff last worked for GE in February 2008. (Compl. ¶ 38.) At no time prior to or following the termination of his employment did Plaintiff initiate the DRP's procedures. (Harrison Decl. ¶ 7.)

GE now moves that this Court compel Plaintiff's arbitration of the claims covered under the DRP, or, in the alternative, that the cause be dismissed for lack of subject matter jurisdiction.

## DISCUSSION

A.   STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") governs the resolution of private disputes through arbitration. 9 U.S.C. § 1 *et seq.* Section 2 of the FAA provides:

5

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9. U.S.C. § 2.

Courts *must* compel arbitration when a valid arbitration agreement exists because the FAA's provisions are mandatory. *See* 9 U.S.C. § 2; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced. . . ."). In order to compel arbitration under the FAA, a party must show: (1) that a dispute between the parties exists, (2) that a contract between the parties includes an arbitration provision which would seem to cover the dispute, (3) that the contract or transaction at issue involves interstate or foreign commerce, and (4) that one party refuses to arbitrate the dispute. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).

Additionally, if all issues in a case are properly referable to arbitration, the Fourth Circuit has held that the case may be dismissed. *See Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of §3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); *see also Alford v. Dean Witter Reynolds, Inc.*, 575 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

B.  Analysis

The filings in this case establish that the first, third and fourth elements of the four-part *Adkins* test are satisfied: the Complaint and GE's answer reveal that a dispute exists with respect to Cook's employment with GE (*See* Compl., Ans.), and Cook has explicitly refused to arbitrate that dispute [DE-24] (Letter from Wesley D. Cook to Michael D. McKnight, 1).

It is also beyond dispute that the purported contract between Cook and GE involves interstate commerce. A matter involves commerce under the FAA if it simply "affects" commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274 (1995); *accord Circuit City v. Adams*, 532 U.S. 105 (2001). The jet engines assembled at the Durham facility where Plaintiff worked are shipped to customers across the United States and parts used in these engines come from GE facilities and suppliers located in other states. (Harrison Decl. ¶ 8.) Additionally, the DRP which Plaintiff agreed to specifically contains an acknowledgment that GE "is engaged in transactions involving interstate commerce . . ." (DRP 14.)

i.  Existence of a Contract to Arbitrate the Covered Claims

Accordingly, the only genuinely disputed issue between the parties is whether a valid contract exists which mandates arbitration of Plaintiff's claims. Plaintiff insists that no such agreement exists. In support of this position, Plaintiff contends that he did not sign "Defendant's Acknowledgment-Condition of Employment Letter" [DE-37] (Pl.'s Mem. in Opp. to Def.'s Mot. to Compel Arb. or, in the Alternative to Dismiss Compl. for Lack of Sub. Matt. Juris., 6.) Plaintiff contends that because he never signed an acknowledgment of the conditions of his employment with GE, he cannot be bound by those conditions, particularly those conditions

7

requiring him to arbitrate employment related claims.

Plaintiff's argument is unavailing for two reasons. First, the Court finds as a matter of fact that the Plaintiff *did* sign an acknowledgment letter and that that letter clearly and unambiguously requires Plaintiff "to submit unresolved covered employment legal claims to a four-step resolution process, including external mediation and final and binding arbitration instead of filing such claims in court." (Acknowledgment, ¶1.e.) Plaintiff, counters, however, that the signature that appears on this Acknowledgment is not his signature, and he alludes to GE's bad-faith in so doing.

However, GE offers the Acknowledgment accompanied by GE's HR director's sworn declaration that the Acknowledgment is a true and accurate copy of the document signed by Plaintiff before he started working for GE. (Harrison Decl.) Plaintiff's unsupported and unsworn denial that he did not sign the Acknowledgment fails as a matter of law and fact to undermine the validity of the Acknowledgment. *See* Fed. R. Evid 1003 ("A duplicate is admissible to the same extent as an original unless...a genuine question is raised as to the authenticity of the original.")

Although no *genuine* question exists as to the validity of the duplicate Acknowledgment, in an abundance of caution, the Court indulged Plaintiff's forgery theory by demanding that GE produce the original "singed-in-ink" Acknowledgment. GE responded graciously to the Court's request and on November 15, 2010, it proffered the wet-ink original Acknowledgment from Plaintiff's personnel file. The proffered document bears the mark that is indisputably Plaintiff's signature. Plaintiff's claims of forgery are utterly without merit.

8

Additionally, as a matter of law, whether Plaintiff actually signed the Acknowledgment is irrelevant. Plaintiff agreed to be bound by GE's DRP, including its binding arbitration provisions, by starting work for GE after he admittedly received notice that covered claims arising out of his employment had to be submitted to the DRP rather than filed in court. As this Court has stated, "there is no requirement [under the FAA] that the written arbitration agreement necessarily be signed by the party to be charged. Indeed, neither the applicable statutory provisions nor cases involving this issue have imposed such a requirement." *Real Color Displays, Inc. v. Universal Applied Techs. Corp.*, 950 F. Supp. 714, 717 (E.D.N.C. 1997). Instead, "under North Carolina law, '[c]ontinued employment with actual notice of the implementation of a dispute resolution program evidences an employee's mutual assent to the binding arbitration agreement contained therein.'" *Hightower v. GMRI, Inc.*, 272 F.3d 239, 243 (4th Cir. 2001) (citation omitted).

Here, Plaintiff admits that he had notice of GE's DRP program before starting work for GE. Plaintiff states in his brief that on May 10, 2006—20 days before his first day on the job—he "downloaded all documents from the GE website into a home file . . .as instructed by Mrs. Tomesah Harrison (HR Rep.)" (Resp. p. 5.) Included among the documents Plaintiff downloaded was a copy of the Conditions of Employment Letter, which is attached to Plaintiff's Response. (See "Attachment # 31" to Response) [DE-37-33]. The copy of the letter Plaintiff downloaded shows mark-ups to Paragraph 1.e, the section that includes the requirement that employees submit covered employment claims to GE's four-step DRP rather than pursuing them in court. *Id.* These edits are incorporated in the Acknowledgment dated May 30, 2006 that bears Plaintiff's signature and the text of both documents is identical. (*Compare* "Attachment #

9

30" to Response, DE 37-32 *with* "Attachment # 31" to Response, DE-37-33.) Plaintiff's admission that he received actual notice of GE's four-step DRP when he downloaded a copy of the Conditions of Employment Letter on May 10, 2006, coupled with the undisputed fact the he did not begin working for GE until May 30, 2006, evidences Plaintiff's assent to the binding arbitration provisions of GE's DRP regardless of whether he signed any acknowledgment. The Court must therefore grant GE's motion to compel arbitration provided that Plaintiff's claims fall within the scope of those claims subject to arbitration under the DRP. *See Hightower*, 272 F.3d at 242-43 (reversing district court and granting motion to compel arbitration under FAA even though plaintiff did not sign parties' arbitration agreement); *Howard v. Oakwood Homes Corp.*, 134 N.C. App. 116, 121, 516 S.E.2d 879, 882, *review denied*, 350 N.C. 832, 549 S.E.2d 288 (1999) (holding that plaintiff who received a copy of the company's dispute resolution procedure in the mail and continued to work for less than three months after its effective date was bound by the arbitration provision in the dispute resolution procedures despite the fact that she did not sign her employer's dispute resolution program).

    ii.    <u>The Scope of the Parties' Arbitration Agreement</u>

Having established the existence of a valid arbitration agreement between the parties, the Court must now construe the scope of that agreement to determine if Plaintiff's claims are must be referred to arbitration. All of Plaintiff's claims fall within the scope of claims that are subject to arbitration under the DRP.

Plaintiff alleges claims for: (1) Wrongful discharge in violation of North Carolina public policy as stated in N.C. Gen. Stat. § 143-422.2, 42 U.S.C. § 2000e-2, and 42 U.S.C. § 1981

(Compl. ¶ 41); (2) Violation of Plaintiff's State Constitutional Rights, specifically violation of Article 1, § 19 of the North Carolina Constitution (Compl. ¶ 55); (3) Age Discrimination, although no statutory basis for this claim is provided (Compl. ¶¶ 57-59); (4) Intentional Infliction of Emotional Distress (Compl. ¶¶ 60-68); (5) Aggravated Breach of Contract, Promissory Estoppel and/or Fraud (Compl. ¶¶ 69-83); and (6) Negligent Infliction of Emotional Distress (Compl. ¶¶ 84-90).

Claims covered by the DRP, and therefore subject to arbitration, include: (1) claims relating to involuntary terminations, discharges (including constructive discharges), and notice of mass layoffs or plant closings; (2) employment discrimination and harassment claims, based on age, race, sex, religion, national origin, veteran status, citizenship, handicap/disability, or other characteristic protected by law; (3) claims of breach of contract or covenant (express or implied) and/or promissory estoppel; (4) tort claims (intentional torts, negligence, defamation, invasion of privacy, infliction of emotional distress, etc.); and (5) claims of violation of public policy. (DRP 10-11.)

Here, each of the claims asserted by Plaintiff in the Complaint falls into one or more of the above-listed categories of claims subject to arbitration. As an initial matter, all of Plaintiff's claims are related to his discharge and are therefore covered by the first category listed above. In addition, all of the claims in the Complaint are also covered by at least one more of the above categories. For example, Plaintiff's claim for "age discrimination" falls into the second category, above, as it involves "employment discrimination" while his claim for "Aggravated Breach of Contract, Promissory Estoppel and/or Fraud" falls into the third-listed category. Plaintiff's claims for intentional and negligent infliction of emotional distress are tort claims specifically

11

enumerated in the fourth category above and Plaintiff's claims for wrongful discharge in violation of public policy and for alleged violation of the North Carolina constitution are "claims of violation of public policy."

Because each of Plaintiff's claims is clearly covered by the DRP, the Court must compel Plaintiff to submit these claims to the DRP, including binding arbitration.

## CONCLUSION

For the above stated reasons, defendants' motion to compel arbitration is GRANTED. Because all claims alleged in Plaintiffs' complaint fall within the scope of the relevant employment agreement and must be submitted to arbitration, Defendants' motion to dismiss is likewise GRANTED. The clerk is directed to close the case.

SO ORDERED.

This, the 21 day of November, 2010.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE